In re MARINER POST–ACUTE NET-WORK, INC., a Delaware Corporation, and affiliates, Debtors.

In re Mariner Health Group, Inc., a Delaware Corporation, and affiliates, Debtors.

Arthur W. Stratton, Jr., M.D., David N. Hansen, Paul J. Diaz, and Douglas Stone, Plaintiffs/Counterclaim Defendants,

v.

Mariner Health Care, Inc., a Delaware Corporation, Defendant/Counterclaim Plaintiff.

Bankruptcy Nos. 00–00113 MFW, 00–215–MFW. Adversary Nos. 02–5604, 02–5606.

United States Bankruptcy Court, D. Delaware.

Dec. 16, 2003.

Bruce Grohsgal, Pachulski, Stang, Ziehl Young & Jones, Christopher Dean Loizides, Christopher D. Loizides, P.C., Etta Rena Wolfe, Janett S. Winter–Black, Kimberly A. Allen, Mark D. Collins, Rebecca L. Booth, Russell C. Silberglied, Shannon Stacy Frazier, Thomas L. Ambro, James D. Wareham, Richards, Layton & Finger, Martin R. Leinwand, Noel C. Burnham, Montgomery, McCracken Walker & Rhoads LLP, Rafael Xavier Zahralddin–Aravena, William Pierce Bowden, Ashby & Geddes, Alan W. Behringer, Welch & Behringer, Michael R. Lastowski, Duane Morris LLP, Wilmington, DE, Paul G. Preston, Preston & Cowan LLP, New Orleans, LA, for debtor.

Don A. Beskrone, Office of the U.S. Trustee, Wilmington, DE, U.S. Trustee.

Donna L. Harris, Michael G. Busenkell, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Official Committee of Unsecured Creditors.

Derek C. Abbott, Morris, Nichols, Arsht & Tunnell, Gregory W. Werkheiser, Robert J. Dehney, Wilmington, DE, for defendants.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion to Remand to the Delaware Chancery Court a proceeding commenced by the Plaintiffs against the Debtor. The Debtor opposes the Motion to remand and seeks dismissal of the Delaware Action. For the following reasons, we deny the Plaintiffs' Motion to Remand and grant the Debtor's Motion to Dismiss the Delaware Action.

## I. FACTUAL BACKGROUND

On or about July 31, 1998, a wholly-owned subsidiary of Paragon Health Network merged with Mariner Health Group, Inc. ("the Debtor") through a merger agreement ("the Merger Agreement"). As a result of the merger, the Debtor was the surviving company. The Debtor is a corporation organized under the laws of the State of Delaware, with its headquarters located in Atlanta, Georgia.

Dr. Arthur W. Stratton, Jr. ("Stratton"), David N. Hansen ("Hansen"), Paul J. Diaz ("Diaz") and Douglas Stone ("Stone") (collectively "the Plaintiffs") served in various capacities as officers, directors and/or employees of the Debtor prior to the commencement of the bankruptcy case. Stratton was the Debtor's founder and served as President, Chief Executive Officer and on the Board of Directors of the Debtor from 1988 until July 1998. Hansen was the engagement and lead audit partner at Coopers and Lybrand, L.L.P. (now known as PricewaterhouseCoopers LLP) and was responsible for the audit of the Debtor from its founding until about March 1996. From March through June 1996 Hansen worked as a consultant for the Debtor.

Hansen became Chief Financial Officer of the Debtor in June 1996 and a director in July 1997. Diaz served as President of the Debtor's Inpatient Division and eventually as the Debtor's Chief Operating Officer and Executive Vice President. Stone was the Debtor's Senior Vice President for Reimbursement from at least 1995 until the merger.

On January 18, 2000, the Debtor and its affiliates filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Their Joint Plan of Reorganization was confirmed on April 3, 2002, and the Plan became effective on or about May 13, 2002.

During the bankruptcy case, the Debtor retained special litigation counsel to investigate, among other things, alleged claims and causes of action against the Plaintiffs arising from their conduct during and following the merger. Following confirmation of the Debtor's Chapter 11 Plan, the Debtor filed a suit against the Plaintiffs in the state court in Georgia on August 29, 2002 ("the Georgia Action"). In the Georgia Action, the Debtor alleged that the Plaintiffs: (1) made or caused to be made false representations of material fact and concealed material facts relating to the Debtor's financial and operational integrity and historical performance, (2) breached their fiduciary duties, and (3) acted in bad faith.

At about the same time, on September 3, 2002, the Plaintiffs initiated the Delaware Action. In that suit, the Plaintiffs asserted that the Debtor breached the Merger Agreement by filing the Georgia Action (Count I); that the Merger Agreement barred, waived and released the Debtor's claims (Count II); that the Plaintiffs did not make false representations of fact, or commit any of the conduct alleged by the Debtor (Count III); that the Plaintiffs did not breach any of the fiduciary

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

duties they owed to the Debtor (Count IV); that the Georgia Action is barred by estoppel, laches and/or statute of limitations (Count V); that the Debtor breached the Merger Agreement's requirement to maintain directors and officers insurance coverage (Count VI); and that the Debtor must advance expenses in connection with the Delaware and Georgia Actions (Counts VII and VIII). In addition, the Plaintiffs sought an injunction barring the Debtor from continuing the Georgia Action.

On September 17, 2002, the Debtor removed the Delaware Action to this Court.[2] The Plaintiffs filed a Motion to Remand the Delaware Action back to the Delaware Chancery Court. The Plaintiffs assert that many of the claims that they raise in the Delaware Action are unaffected by the bankruptcy proceeding and do not implicate federal bankruptcy law or relate to discharged claims. In response, the Debtor opposed the remand and filed a Motion to Dismiss the Delaware Action asserting it was filed in violation of the Confirmation Order, the Joint Plan of Reorganization and sections 1141 and 524 of the Bankruptcy Code. As a result, the Debtor asserts that the Delaware Action was void ab initio. For the following reasons, we grant the Debtor's Motion.

## II. JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(I), (J), (N), & (O).

## III. DISCUSSION

### A. Effect of Confirmation Order and Discharge Injunction

■ The Debtor contends that the Plaintiffs were enjoined from commencing the Delaware Action because it seeks to recover pre-petition claims against the Debtor. The Debtor asserts that the Confirmation Order and Discharge Injunction enjoined the Plaintiffs' action which seeks pre-petition claims of indemnification and payment of litigation expenses.

Section 1141(a) of the Bankruptcy Code provides that a confirmed plan binds any creditor whether or not the claim or interest of such creditor is impaired under the plan and whether or not such creditor has accepted the plan. *See* 11 U.S.C. § 1141(a). The confirmation of a plan discharges the debtor from any debt that arose prior to the date of confirmation. *Id.* at § 1141(d)(1)(A). Such debts are discharged regardless of whether a proof of claim on such debt was filed or whether the claimant accepted the plan. *Id.* Furthermore, the Bankruptcy Code provides that a discharge operates as an injunction against the commencement or continuation of an action or an act to collect a discharged debt. *See* 11 U.S.C. § 524(a)(2); *In re Ben Franklin Assoc.*, 186 F.3d 301, 304 (3d Cir.1999).

In the Delaware Action, the Plaintiffs asserted counts that involve the breach (albeit post-petition) of a pre-petition contract of indemnification. Such claims are pre-petition claims. *See, e.g., In re Frenville*, 744 F.2d 332, 336 (3d Cir.1984)(finding that indemnification agreements create a contingent right to payment upon the signing of the agreement).

In this case, the Confirmation Order incorporates and mirrors the language of section 1141. It released the Debtor and

---

**2.** Pursuant to 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027, Mariner removed the Delaware Action to the United States District Court for the District of Delaware. Pursuant to 28 U.S.C. § 157(a) and the general order of reference by the United States District Court for the District of Delaware, the Delaware Action was automatically referred to this Court, where the Debtor's bankruptcy case is pending.

Reorganized Debtor from any pre-petition claims and enjoined the commencement or continuation of any action relating to these claims. Thus, the Debtor asserts that the Plaintiffs' commencement of the Delaware Action was a direct violation of the Confirmation Order.

■ In response, the Plaintiffs contend that the Confirmation Order and discharge injunction did not bar their commencement of the Delaware Action because the Confirmation Order was entered without prior notice to them. They argue that they are not bound by the discharge injunction because the Debtor failed to provide actual notice of the hearing on the Disclosure Statement, the hearing on confirmation of the Plan, the entry of the Confirmation Order or the effective date of the Plan. In particular, the Plaintiffs assert that enforcing section 1141 or the Confirmation Order without notice is a violation of their due process rights.

■ We disagree with the Plaintiffs' assertions. Due process requires notice reasonably calculated, under all circumstances, to inform interested parties of the pendency of an action and to give them an opportunity to present their objections. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Due process does not require actual notice of every step in a bankruptcy proceeding. *See, e.g., In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53 (Bankr.D.Del.2001). In bankruptcy, due process requires that known creditors be provided with notice of the debtor's bankruptcy filing and the claims bar date. *See*

*Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir.1995).

In this case, the Plaintiffs admit that they had actual notice of the commencement of the Debtor's bankruptcy case. This knowledge put the Plaintiffs on notice of the pendency of an action that could impact their pre-petition rights and gave them an opportunity to be heard in this case. *See, Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1098 (5th Cir. 1984).

Further, it is uncontested that Stratton received notice of the bar date, the confirmation hearing and a copy of the Plan. In fact, Stratton filed a proof of claim against the Debtor in this case. Thus, it is clear that Stratton had sufficient notice of the case and an opportunity to be heard.

Although the remaining Plaintiffs did not file claims, and may not have received actual notice of the Confirmation Order, they do not contest that they received notice of the claims bar date. Instead, they contend that notice of the claims bar date was insufficient to satisfy due process. We disagree. *See Chemetron*, 72 F.3d 341 (holding that due process requires known creditors be provided with notice of the bankruptcy filing and the claims bar date). Accordingly, we conclude that, because they had notice of the case and bar date, the Plaintiffs were on notice of their ability to file contingent claims against the estate for indemnification.[3]

Even if we were to conclude that the Plaintiffs did not receive actual notice of the Disclosure Statement or Plan before the entry of the Confirmation Order, and that such notice was required by due pro-

---

3. In addition, the Plaintiffs did have actual notice that the Debtor had a potential claim against them because they executed agreements tolling the statute of limitations with respect to suits the Debtor had against them. Although the Plaintiffs assert that the Debtor misled them into signing tolling agreements, we conclude that signing such agreements would put a reasonable person on notice of the potential for a cause of action being filed against him.

cess, we note that they did have notice of the Order in sufficient time to seek revocation of that order.[4] The Plaintiffs were aware of the Confirmation Order (entered on April 3, 2002) when the Debtor filed the Georgia Action on August 29, 2002.[5] In addition, the Plaintiffs had several conversations with Debtor's counsel regarding the Plan's discharge of their pre-petition claims before the Plaintiffs filed the Delaware Action. Finally, the Plaintiffs had full knowledge of the Plan and its impact when they filed the Delaware Action on September 3, 2002. Accordingly, we conclude that the Plaintiffs were given an opportunity to assert their pre-petition rights by seeking to revoke the Confirmation Order. By not preserving their rights under section 1144, we conclude that the Plaintiffs may no longer contest the impact of the Plan. Consequently, we conclude that the Plaintiffs are bound by the Confirmation Order which enjoins their attempt to pursue their pre-petition claims of indemnification and payment of litigation expenses.

### B. *Void Ab Initio*

■ The Debtor next contends that, since the Plaintiffs are enjoined from pursuing their pre-petition claims, the Plaintiffs should also be precluded from pursuing the remaining claims in the Delaware Action. The Debtor asserts that, because the pre-petition claims were discharged, the entire Delaware Action is void ab initio. Accordingly, the Debtor argues that this Court should dismiss the Delaware Action rather than remand to avoid duplicative and uneconomical use of judicial resources. We agree.

■■ It is well settled bankruptcy law that a state court judgment obtained in violation of a discharge injunction is void. *See, e.g., In re Pavelich,* 229 B.R. 777 (9th Cir. BAP 1999); *In re Motley,* 268 B.R. 237, 242 (Bankr.C.D.Cal.2001).[6] Actions which violate the discharge injunction, similar to actions which violate the automatic stay, are void ab initio. *Motley,* 268 B.R. at 242. Thus, we conclude that the Delaware Action is void ab initio because the Plaintiffs asserted causes of action in violation of the Confirmation Order and discharge injunction.

Additionally, we conclude that considerations of judicial economy require that we deny the Plaintiffs' Motion to Remand and grant the Debtor's Motion to Dismiss the Delaware Action. If we were to remand the Delaware Action, we are confident that the Delaware Chancery Court would also conclude that the action was void and dismiss it.

### C. *Judicial Economy*

■ Even if the Delaware Action were not void ab initio, separate grounds exist for denying the Motion to Remand and granting the Motion to Dismiss. The record establishes that the Delaware Action and Georgia Action are substantially identical; many of the counts in the Delaware

---

**4.** Section 1144 provides that "[O]n request of a party in interest at any time before 180 days after the date of the entry of an order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured through fraud." 11 U.S.C. § 1144.

**5.** The Georgia action was commenced on August 29, 2002, before the expiration of the 180 day period (September 30, 2002).

**6.** Where the automatic stay imposes an injunction on the commencement or continuation of proceedings against the debtor that arose before the commencement of the case, the discharge continues this injunction after the claims are discharged. *Compare* 11 U.S.C. § 362(a)(6) *with* 11 U.S.C. § 524.

Action are merely the Plaintiffs' statement of position in response to the allegations of the Debtor in the Georgia Action, either affirmatively or defensively. The Georgia Courts have already determined that Georgia is an appropriate forum and the case is ready to proceed there.[7] Remanding the Delaware Action would cause the parties and the Courts to expend unnecessary resources in trying the same issues twice and risks inconsistent results.

## IV. CONCLUSION

For the foregoing reasons, we deny the Plaintiffs' Motion to Remand this case to the Delaware Chancery Court and grant the Debtor's Motion to Dismiss the Delaware Action.

### ORDER

**AND NOW** this **16th** day of **DECEMBER, 2003,** upon consideration of the Motion to Remand the Delaware Action filed by Plaintiffs and the Motion to Dismiss the Delaware Action filed by the Debtor, it is hereby

**ORDERED** that the Motion to Remand the Delaware Action filed by the Plaintiffs is hereby **DENIED,** and it is further

**ORDERED** that the Motion to Dismiss the Delaware Action filed by the Debtor is hereby **GRANTED.**

7. On December 6, 2002, the Georgia Court denied the Plaintiffs' Motion to Dismiss the Georgia Action for lack of jurisdiction and improper venue. The Court held that the Plaintiffs could not enforce the forum selection clause in the Merger Agreement. The Plaintiffs appealed and on March 3, 2003, the Appellate Court denied their application, thus forcing the Plaintiffs to litigate the Georgia Action.