384 P.3d 1249

**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007–2, a Delaware Statutory Trust, Plaintiff/Appellant,**

v.

**Donna RAND (aka Donna Smock) and Thomas Smock, a married couple, Defendants/Appellees.**

**No. 1 CA–CV 15–0405**

Court of Appeals of Arizona, Division 1.

FILED 11/29/2016

Sessions Fishman Nathan & Israel, LLP, San Diego, CA, By Damian P. Richard, Counsel for Plaintiff/Appellant

Mandel Young, PLC, Phoenix, By Taylor C. Young, Erin Ford Faulhaber, Counsel for Defendants/Appellees

Judge Patricia A. Orozco delivered the opinion of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

## OPINION

OROZCO, Judge:

¶ 1 National Collegiate Student Loan Trust (National) appeals from a judgment in favor of Donna and Thomas Smock (the Smocks). National argues the trial court erred in granting judgment in favor of the Smocks because the debt was a student loan that was not discharged in the Smocks' Chapter 7 bankruptcy. For the following reasons, we reverse and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In September 2009, the Smocks sought Chapter 7 bankruptcy protection. They identified National as a creditor with an unsecured, non-priority claim. In their petition, the Smocks contended none of their debts constituted student loan obligations. They provided notice of their pending Chapter 7 bankruptcy to all creditors, including National. National did not object or otherwise respond to the Smocks' notice of pending bankruptcy. The Chapter 7 discharge, specifically provided that "[d]ebts for most student loans" were not discharged.

¶ 3 In September 2013, National filed suit against the Smocks alleging breach of contract. According to National, Donna applied for a student loan and Thomas co-signed. National disbursed $26,000 to the Smocks, who subsequently defaulted.

¶ 4 The Smocks answered the complaint, admitted they incurred the debt, but contended it was not a "student loan" and the debt was discharged as part of their 2009 Chapter 7 bankruptcy. The case was arbitrated in June 2014 in favor of the Smocks. National appealed and requested a bench trial.

¶ 5 The trial court conducted a proceeding at the time set for trial, but did not swear in any witnesses, admit any exhibits or receive any evidence. No motions had been filed and the court held a discussion with the parties. During the discussion, National admitted the debt was listed among the debts the Smocks disclosed in their 2009 bankruptcy, but argued the debt was a non-dischargeable student loan. The Smocks did not dispute the existence of the debt, instead contending it was discharged in their bankruptcy. The Smocks admitted they did not file an adversary proceeding in the Bankruptcy Court.

¶ 6 The trial court did not consider whether the debt was a student loan, and instead determined the Bankruptcy Court order was "valid on its face," interpreting the order as discharging the Smocks' debt to National. The trial court entered judgment in favor of the Smocks, and noted that "any relief from [the discharge] order must come from Bankruptcy Court and not this Court." National

timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes sections 12–120.21.A.1 and –2101.A.1 (West 2016).[1]

## DISCUSSION

■ ¶ 7 National argues the trial court erred in failing to determine the Smocks' debt was a student loan exempt from discharge, absent a finding of undue hardship. Pursuant to 11 U.S.C. § 523(a)(8)(B), student loans are exempted from discharge in bankruptcy "unless excepting such debt from discharge would impose an undue hardship on the debtor." To secure discharge of a student loan, Federal Rule of Bankruptcy Procedure 7001(6) requires debtors to initiate an adversary proceeding to determine the dischargeability of a debt. The Smocks maintain the judgment in their favor was appropriate. We review a trial court's legal conclusions de novo. *Ass'd Aviation Underwriters v. Wood*, 209 Ariz. 137, 171, ¶ 107, 98 P.3d 572 (App. 2004).

■ ¶ 8 Because no testimony was taken and no evidence was admitted at trial, we have virtually no record to review. Indeed, there is no evidentiary basis for *any* of the trial court's findings or conclusions. "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Hurd v. Hurd*, 223 Ariz. 48, 51, ¶ 19, 219 P.3d 258 (App. 2009) (quoting *State ex. rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 14, 66 P.3d 70 (App. 2003)). Because the record is devoid of competent evidence supporting the judgment, we conclude the trial court erred in finding in favor of the Smocks.

■ ¶ 9 On remand, the issue of whether the debt in this case was discharged in the Smocks' bankruptcy will undoubtedly again arise. Relying on *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), the trial court determined that the Smocks' debt was "discharged" in their Chapter 7 bankruptcy and it was bound by the Bankruptcy Court's or-

der "discharging" the debt, "so long as the creditor got notice." The trial court further determined that, pursuant to *Espinosa*, "[w]hether [the discharge] is valid and enforceable depends on whether the creditor got notice." Because National conceded it was a creditor properly notified of the Smocks' pending Chapter 7 bankruptcy, the discharge was proper. *See id.*

¶ 10 In *Espinosa*, the Supreme Court considered whether a Bankruptcy Court's failure to make a finding of undue hardship before approving a plan discharging student loan interest in a Chapter 13 bankruptcy entitled a creditor to relief pursuant Federal Rule of Civil Procedure 60(b)(4) (a "void" judgment is grounds for relief). *Id.* at 265–66, 130 S.Ct. 1367. Espinosa filed his Chapter 13 plan and included his student loan, proposing to pay the principal amount on the loan, and that upon payment, the accrued interest would be discharged. *Id.* at 264, 130 S.Ct. 1367. He did not file an adversary proceeding claiming undue hardship. *Id.* Espinosa's creditor was notified of the plan and filed a proof of claim for an amount that included Espinosa's student loan principal and interest, but did not object to the plan's proposed discharge of the student loan interest without a determination of undue hardship. *Id.* at 265, 130 S.Ct. 1367. After the plan was confirmed, the bankruptcy trustee notified the creditor that the amount of its proof of claim differed from the amount listed for payment in the plan. *Id.* The trustee warned the creditor that its claim would be paid as listed in the plan, unless the creditor contacted the trustee. *Id.* The creditor never responded. *Id.*

¶ 11 Nearly five years after the principal was repaid and the interest was discharged pursuant to the plan, the creditor attempted to collect the unpaid interest. *Id.* at 266, 130 S.Ct. 1367. Espinosa responded by filing a motion in Bankruptcy Court, requesting enforcement of the discharge. *Id.* The creditor cross-moved, requesting relief pursuant to Federal Rule of Civil Procedure 60(b)(4), arguing it was denied due process because Espinosa failed to file an adversary proceed-

---

1. We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

ing and the Bankruptcy Court made no finding of undue hardship. *Id.* at 266–67, 130 S.Ct. 1367. The Supreme Court found the debtor's failure to file an adversary proceeding did not divest the Bankruptcy Court of its ability to discharge the student loan interest, even absent a finding of undue hardship. *Id.* at 275, 130 S.Ct. 1367. Because the student loan creditor "had actual notice of the filing of Espinosa's [Chapter 13] plan, its contents, and the Bankruptcy Court's subsequent confirmation of the plan," the discharge was not voidable pursuant to Federal Rule of Civil Procedure 60. *Id.* at 275, 130 S.Ct. 1367.[2]

¶ 12 The present case, however, is distinguishable from *Espinosa* because it involves a Chapter 7 bankruptcy proceeding, not a Chapter 13 proceeding. The Bankruptcy Code provides two channels of relief for individual debtors: Chapters 7 and 13 bankruptcies. *See* 11 U.S.C. §§ 704(a)(1); 726.

 ¶ 13 "In a Chapter 7 bankruptcy proceeding, also called a 'liquidation,' a bankruptcy trustee immediately gathers up and sells all of a debtor's nonexempt assets in the estate, using the proceeds to repay creditors in the order of the priority of their claims." *In re Blendheim*, 803 F.3d 477, 485 (9th Cir. 2015). After meeting the bankruptcy conditions, the court may discharge certain debts, releasing the debtor from personal liability. *Id.*; *see also* 11 U.S.C. § 727(b). Chapter 7 offers debtors the chance to "make a fresh start" with "a clean break" from their financial past. *Harris v. Viegelahn*, —— U.S. ——, 135 S.Ct. 1829, 1835, 191 L.Ed.2d 783 (2015).

 ¶ 14 Alternatively, a Chapter 13 proceeding, or " 'reorganization,' is designed to encourage financially overextended debtors to use current and future income to repay creditors in part, or in whole." *Blendheim*, 803 F.3d at 485. The Chapter 13 debtor proposes a plan for the repayment of his debts, *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990), giving notice of the proposed plan to creditors, who may object. 11 U.S.C. § 1324. Only individual debtors with "regular

income" are eligible for Chapter 13 reorganization. 11 U.S.C. §§ 101(30), 109(e). "Unlike Chapter 7 proceedings, where a debtor's non-exempt assets are sold to pay creditors, Chapter 13 permits debtors to keep assets . . . so long as they make the required payments . . . under their confirmed plan of reorganization." *Blendheim*, 803 F.3d at 485.

¶ 15 Here, unlike *Espinosa* where the debtor requested relief and submitted a plan pursuant to Chapter 13, the Smocks' bankruptcy was a Chapter 7 proceeding, there was no plan to object to and the "notice" found by the trial court was not the same notice provided in *Espinosa*. Also, in *Espinosa*, the creditor had notice that, under the Chapter 13 reorganization plan, the debtor intended to repay only the principal and discharge the interest. Finally, in *Espinosa* and this case, the debtors did not file an adversary proceeding and no determination of undue hardship or dischargeability of the debt was made.

¶ 16 Unlike *Espinosa*, the notice of the Smocks' pending bankruptcy relied on by the trial court, instructed their creditors to *refrain* from filing a proof of claim because "[t]here does not appear to be any property available to the trustee to pay creditors." In this instance, not only was National instructed *not* to file a proof of claim, but there was no reason for National to do so, in the absence of any assets to satisfy the debt.

¶ 17 Because the Smocks admit they did not file an adversary proceeding to determine dischargeability, as required by Federal Rule of Bankruptcy Procedure 7001(6), the trial court erred in interpreting the Bankruptcy Court's order as a discharge of the Smocks' debt to National, if in fact it was a student loan debt. Without the adversary proceeding and finding of undue hardship, the debt was not discharged or otherwise affected by the Smocks' bankruptcy.

¶ 18 If the Smocks believe the debt was discharged through their bankruptcy, they may file a proceeding in the Bankruptcy

---

**2.** Citing an unreported case from Michigan District Court, National argues the trial court's reliance on *Espinosa* is misplaced because, unlike the instant case involving a Chapter 7 bankruptcy, *Espinosa* involved a Chapter 13 debtor. *See*

*U.S. v. Frederick*, 2011 WL 379418 (Feb. 3, 2011). Because citation to this authority is not proper, we do not consider this case. *See* Ariz. R. Sup. Ct. 111(c)(d); ARCAP 28(f).

Court to enforce the discharge of the debt against National. *See* 28 U.S.C. § 157(b)(1) (authorizing bankruptcy courts to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11"); 28 U.S.C. § 157(b)(2)(I),(J) (providing that "core" proceedings include determinations as to the "dischargeability of particular debts" and "objections to discharges"); *In re Lenke*, 249 B.R. 1, 8 (Bankr. Ariz. 2000) (holding that the "Ninth Circuit's reliance on bankruptcy courts' 'plenary' power over 'core' proceedings applies ... to discharge determinations" under 28 U.S.C. § 157(b)(2)(I) and (J)); *In re Pavelich*, 229 B.R. 777, 782 (B.A.P. 9th Cir. 1999) ("Regardless of what a state court may do with respect to the personal liability of a discharged debtor, the bankruptcy court has jurisdiction to enforce the statutory discharge injunction.").

¶ 19 The Smocks requested attorney fees and costs on appeal; because they are not the prevailing party, they are not entitled to attorney fees and costs. However, National, as the prevailing party, is entitled to costs upon compliance with ARCAP 21.

### CONCLUSION

¶ 20 For the foregoing reasons, we remand to the trial court to first take evidence to determine whether the debt is in fact a student loan. If it is not a student loan, then it was discharged in the Smocks' bankruptcy and the judgment in favor of the Smocks was proper. If it was a student loan, then the judgment was not proper and this case may proceed. As previously stated, if the Smocks believe the debt was discharged, they may enforce the discharge by filing an action in Bankruptcy Court.